## Preston v. Preston, Appellant.

*Trust and trustees—Trustee ex maleficio—Life estate—Act of April 22,
1856, P. L. 532.*

Where a decree of court directs that a fund shall be invested in the name
of children with a life estate in their father, and the father with full knowl-
edge of the decree subsequently takes a deed to himself without refer-
ence to the children, and thereafter in an equity suit declares in an answer
that he owns only a life estate in the land, he will be deemed either to hold
the property as a trustee ex maleficio for his children, or as a life tenant
under his declaration in the equity proceeding, and the 6th section of the
Act of April 22, 1856, P. L. 532, will not begin to run until after the death
of the father.

Argued Feb. 18, 1902.    Appeal, No. 284, Jan. T., 1901, by
defendant, from decree of C. P. Schuylkill Co., March T., 1900,
No. 2, on bill in equity in case of Samuel Preston, John Pres-
ton and Thomas Preston, v. Eliza Preston, James Preston, Wil-
liam Preston and Mary Preston.    Before McCollum, C. J.,
Mitchell, Fell, Brown and Potter, JJ.    Affirmed.

Bill in equity to declare a trust and for an account.

Shay, J., filed the following opinion:

The complainant's bill sets forth, that they are the children
of James Preston, of the borough of Shenandoah, and Sarah,
his wife ; that James Preston brought suit for divorce against
his wife in 1866, and she thereupon petitioned the court for the
appointment of a guardian for these minor children, to care for
and invest certain moneys, which she had deposited for their
benefit.    That the court thereupon appointed M. M. Ketner,
Esq., the guardian as prayed for, who filed an account July 26,
1870, showing a balance of $372.26 for said children.    That
this court did thereupon order and direct said Ketner to pay
over said balance to O. P. Bechtel, who was directed to invest the
same in a house and lot to be purchased from P. W. Sheafer ;
that said money was paid to said Sheafer, but that no deed
was made for said property until October 3, 1884, when there
was made a deed for said property to James Preston, recorded
in deed book, No. 176, page 611, containing no reservations or

restrictions for the benefit of the children, the complainants, in accord with the order and command of this court.

That the said James Preston lived in said premises during his lifetime as permitted by said order of court so to do, and that he died therein in November, 1899.

That said deed was made by said Sheafer to said James Preston without the reservations aforesaid, either by mistake, fraud, clerical error or accident.

That said defendants are in possession of said property and decline and refuse to recognize complainants in connection with the ownership thereof or permit them to take charge of the same.

And they pray for the following relief :

1. That we order and decree that James Preston held the real estate, consisting of lot No. 13, block 127, in the borough of Shenandoah, conveyed as aforesaid in trust for the above named complainants.

2. An accounting for the rents.

3. All moneys received by said defendants, as determined by account, shall be repaid to said complainants.

Defendants have filed a very lengthy answer, which sets forth, inter alia, as follows :

That James Preston purchased a lot from P. W. Sheafer, in Shenandoah, by deed dated August 9, 1864, which deed was made to Sarah Preston, his then reputed wife, and they conveyed this lot to J. M. Tillman by deed dated January 9, 1867. That at the time of separation of James and Sarah Preston, they had three children ; she took them and claimed a portion of the money arising from said sale for the support and maintenance of herself and children; that said money was deposited under objection from said James Preston ; that respondents believe that Sarah Preston went into court in March, 1867, in the absence of James Preston and at a time when he was not represented by an attorney, and had Ketner appointed trustee as contained in complainant's bill, but they deny that Ketner was appointed guardian.

That Ketner filed an account showing a balance of $370, and that the records show, on May 31, 1870, an order of court to Ketner as set forth in complainant's bill.

They deny the order of O. P. Bechtel to purchase house

and lot from P. W. Sheafer, but allege the house and lot as appears from the order was from P. W. Sheafer and C. T. Wilrich, and that this was probably the one sold to Tillman before stated.

They deny that complainants ever had any right, title or interest in the house and lot situate on West Coal street, being part of lot No. 13, block 127, but the same was the property of the said James Preston in his own right, having bought the same many years ago. That said property was assessed to James Preston as early as 1876, and sold by treasurer in 1878 for unpaid taxes and bought in by commissioners, and repurchased by Preston on March 21, 1884. That the said James Preston erected buildings on said lot and paid for the same with his own money.

That on October 3, 1884, Gilbert and Sheafer executed and delivered in fee simple to James Preston a deed for lot No. 13, block 127, and James Preston paid $200 for the same, and this deed is recorded in deed book, 176, page 611. They claim possession in James Preston for twenty-one years and deny that any trust was vested in him.

That in October, 1883, John Preston, one of the plaintiffs in the present suit, rented from James Preston, his father, one of the houses on this lot. That in October, 1884, a portion of the rent was unpaid, and the lease having expired by due notice, James Preston commenced proceedings to dispossess his said tenant; that from the judgment rendered against him before a justice, he appealed, and then, the said John Preston on behalf of himself and of his brothers, went into the court of equity and tried to enjoin the said James Preston from proceeding to dispossess him, and asked for an injunction, and upon hearing of the case before Judge GREEN, the court refused the injunction against him.

That in this equity proceeding, the said John Preston attempted to set up an interest in the property, which was denied emphatically at that time. It was also denied that any interest was in him, but that it was the sole, distinct and separate property of James Preston.

That after the divorce proceeding above referred to, the said James Preston was lawfully married, and that Eliza Preston, James Preston and William Preston were issue of that second

marriage and are respondents in this case, and that prior to his death, he made his will giving to the children above mentioned the property in dispute.

They allege a valid and perfect title to the said property, and further allege that, if it was true that a trust was created, or any act done to create a trust in favor of these children, it was barred by the statute of limitations.

They aver they are ready to prove all of the other allegations and pray to be dismissed.

We have thus set forth in brief all the material allegations of the answer.

The complainants in their replication join issue with the defendants, and the following facts we find from the evidence taken before us:

It appears from the uncontradicted evidence in this case that James and Sarah Preston, residing in Shenandoah in this county, had marital difficulties, which culminated about the year 1866, in a suit for divorce brought in this court by the husband against the wife, and the parties separated, although the suit does not appear to have been pressed to a final issue. The complainants, Samuel Preston, John Preston and Thomas Preston were infant children of the said James and Sarah Preston at the time of this separation. Also at the time of the separation, Sarah Preston owned a property in Shenandoah, which was sold and a dispute arose between husband and wife as to the disposition of part of the proceeds of the sale, and from the evidence, it appears that Sarah Preston presented a petition to the court, containing the following:

"The petition of the undersigned, Mrs. Sarah Preston, wife of James Preston, both residing in said county, respectfully showeth:

"That your petitioner is living separate and apart from the said James Preston, her husband, and that a suit in divorce is now pending in this court for the divorcing of the parties a vinculo matrimonii. That your petitioner was seized in fee of certain real estate in her own right to wit: a house and lot situate in Shenandoah city in this county. That in January, 1867, your petitioner, in conjunction with the said husband, granted, conveyed and sold the real estate aforesaid to one Henry Dittman for the sum $1,000, and the money was paid in the

office of Myer Strouse, Esq., in Pottsville.   After the payment
of certain debts in amount $98.00, there remained the net sum
of $902.   Of this amount, your petitioner permitted the said
James Preston to take for his own use one fifth of said amount,
to wit : $180.40, and your petitioner claiming the right to
take the residue for herself and three children (by the said
parties in lawful wedlock begotten), and which said children
are left in your petitioner's care for support and maintenance.
The children are respectively aged, ten, five and two years.
That to this just claim the said James objected, and upon
that, your petitioner retained but the sum of $180.40, and
deposited the balance, after payment of expenses, the sum of
$417, in the Miner's Safe Insurance & Trust Company, Potts-
ville, for the benefit of the said three children, until such time
as your honorable court may order and decree who shall or may
draw the said amount so deposited for the care and support of
the children aforesaid.

" Your petitioner further says that she is the mother of these
chidren, and has no other income at present for their support."

. This is sworn to by Sarah Preston, and the order of the
court is indorsed on the back as follows :

"And now, to wit : May 27, 1867, upon the above peti-
tion being read and heard in open court, the court by agree-
ment and suggestion of counsel for parties interested, appoints
Michael M. Ketner, of Mahanoy City, trustee, and directs him
to enter into bonds in twice the amount of money deposited, as
in said petition mentioned."

Bond was filed by Ketner and on July 26, 1870, he filed his
account, showing a balance of $372.26, and upon presentation
of this account, the court made the following order :

"In the matter of M. M. Ketner, trustee of three of the
children of James Preston :

"And now, May 31, 1870, the court order and direct M. M.
Ketner, said trustee, to pay over all moneys in his hands as
trustee to O. P. Bechtel, and take his receipt for the same,
and he shall hold said receipt as his authority.   And the said
O. P. Bechtel, is hereby directed to invest the same in the
lot and house purchased from P. W. Sheafer, agent, and C. T.
Wilrich, upon which a house has been built, and take the

property or title thereof in the name of the children with a life estate in the father of the said children, James Preston."

Hon. O. P. Bechtel, president judge of this court, testified that he had been, at that time, attorney for James Preston, and paid the money over to P. W. Sheafer or some one in his office and thought he had taken a receipt for the same. He testified to Sheafer's handwriting on a paper which read: "Preston, James: Lot No. 13, bl. 127, Shenandoah, $200 paid in full by O. P. Bechtel."

Walter Sheafer testified he was a brother of P. W. Sheafer, who died in 1891, and that he was part owner of lots in Shenandoah and agent for the other owners, and that at the time of the above transaction, C. T. Wilrich was wont to sell lots for his brother in Shenandoah.

About the year 1884, John Preston, one of these complainants, lived on the lot in question, under lease from his father, James Preston, and a dispute arising as to rent, James Preston started dispossession proceedings before Daniel Bailey, a justice of the peace. John Preston filed a bill in equity asking for an injunction, and James Preston filed an answer, in which he claimed the property, in dispute, for life. This answer was sworn to by James Preston and was in the handwriting of Hon. John W. Ryon, lately deceased. The words for life and during his life were interlined and the defendants raised exception to this, alleging a forgery.

H. B. Bartholomew, a member of the bar, testified that as student and lawyer, he had been associated with Mr. Ryon for about twelve years, was familiar with his handwriting, and that to the best of his knowledge, these interlineations were the handwriting of Mr. Ryon. The writer of this was also a student of Mr. Ryon, at the time this answer was written, was associated with him for many years, was familiar with his handwriting and on an inspection of the same, believes unquestionably that these interlineations were written by Mr. Ryon. The bill in the above case was filed October 9, 1884, and the answer above referred to was filed June 8, 1885. In an opinion of this court, filed by the Hon. D. B. GREEN, it is said, inter alia, "The answer of James Preston denies all material allegations of the plaintiffs' bill. It claims for him a life interest in the property," etc.

On October 3, 1884, P. W. Sheafer and wife, and Gilbert and Shaefer, executors of John Gilbert, conveyed to James Preston, " All the estate, right, title, interest, etc., of all that certain lot situate on the southern side of Coal street, Shenandoah, and being the same lot, which is known and marked as lot number thirteen of block number one hundred and twenty-seven on a map or plan of said West Shenandoah made by P. W. Sheafer." The only reservations in this deed are the mineral rights. The receipt for $200 purchase money is signed by P. W. Sheafer, and his son testifies that this is his father's handwriting. Deed is duly acknowledged and is recorded in deed book, No. 176, page 611, on October 11, 1884.

James Preston died in 1899, and his will was offered in evidence, giving to his three sons, Samuel Preston, John Preston and Thomas Preston, these complainants, $1.00 each, and to his daughter Eliza Preston, and his two sons, James Preston and William Preston, all his property in fee. These last are the defendants in the present bill, and are the children by a second wife. This will was probated November 29, 1899, and shortly after this present suit was brought. The said defendants have been in possession of the premises from the death of the said James Preston, rented part of the premises for $13.00 per month, and the one house has been occupied by the defendants as a dwelling for themselves since the father's death.

There was evidence on the part of the defendants to show no house was on this lot at the time Preston took possession; but we think that the evidence clearly shows that the lot ordered by the court to be purchased in their order of May 31, 1870, and for which Judge BECHTEL paid the money, to wit: lot 13, block 127, is the same as the one for which James Preston procured a deed from Sheafer in 1884, to wit: lot No. 13, block 127.

This evidence was taken before us and fully argued by counsel.

The following are the findings of fact as we gather them from the evidence submitted :

1. Samuel, John and Thomas Preston, the complainants, are the children of James and Sarah Preston, for whose benefit the order of court, of May 27, 1867, appointing M. M. Ketner, trustee, was made.

2. That M. M. Ketner, trustee for said three children, filed

his first and final account on July 26, 1870, showing a balance due of $372.26, and that, in pursuance of an order of court, dated May 31, 1870, said trustee paid over to O. P. Bechtel, who was counsel in said proceeding for James Preston, the above sum, and that said Bechtel was directed to invest the same in a lot and house and take the property and title thereof in the name of said children, with a life estate in the father of said children, James Preston.

3. That in pursuance of said order of court, said Bechtel invested $200 of said funds in lot No. 13, block 127, Sheafer's plan of Shenandoah, said Bechtel paying in full for the same on July 25, 1870, but no deed was made or delivered at that time.

4. That James Preston purchased by deed dated October 3, 1884, recorded in the office for recording of deeds in Schuylkill county, in deed book No. 176, page 611, all the right, title and interest of P. W. Sheafer, et al., in said premises, and this deed contained no reservations save the mineral rights to the grantors; that said James Preston took said deed with knowledge of the order of the court, made May 31, 1870, and that his interest in this lot, according to that order, was for life only.

5. That said James Preston was in possession of said premises prior to October 3, 1884, for a number of years, and continued to live there until his death in November, 1899, and that at the time of his death he had reached the remarkable age of 108 years.

6. That said James Preston, after the date of the said deed, admitted in his answer filed in equity case No. 2, November term, 1884, that he held his title to said premises under the said deed as a life tenant, and the opinion of the court rendered in said proceeding declares the same.

7. The rental value of the premises in dispute is, as near as can be ascertained from the evidence, $18.00 per month, and defendants have been drawing the rents therefrom since the death of the said James Preston in November, 1899; $13.00, the evidence shows, has been paid to defendants for rent of the property, and we find the rental value of the house occupied by defendants to be $5.00 per month, making the total monthly rental value $18.00, as above set forth.

## DISCUSSION.

The facts as above found by us raise two questions of law for our consideration:

1. Was a trust vested in James Preston by the order of court of May 31, 1870, for his three children as to the remainder? And 2. If such trust was created, is it barred by act of 1856, P. L., sec. 6, 532?

Before entering on the discussion of the above questions, there is one point which first calls for our attention. Mary Preston is named as one of the defendants in the caption of the case, though it appears she was not served, neither is she a devisee under the will of James Preston, and, in consequence, we will make no decree as to her, she not being a party to the suit.

In considering the first question, we say that such a trust is established from the evidence by proof, " clear, explicit and unequivocal." James Preston himself was a party to the creation of this trust, for his counsel participated in the proceedings which made Ketner trustee, and also in the later proceedings, when the order of court was made directing O. P. Bechtel (counsel for James Preston) to invest the said money in the house and lot purchased from P. W. Sheafer and C. T. Wilrich, upon which a house has been built, and take the property and title thereof in the name of the children with a life estate in the father of said children, James Preston. Preston unquestionably had knowledge of this order of court, for it is in the handwriting of his own counsel, and the subsequent testimony shows that Bechtel purchased lot No. 13, block 127, Shenandoah, but directed that no deed should be made or delivered at that time. Preston took possession of this lot, and, undoubtedly, under these facts, took, but a life estate, and was trustee for his three children, these complainants, as to the remainder. He lived on the premises and improved them until 1884, and had rented one of the properties to his son, John Preston, and a dispute arose as set forth in the finding of facts, and John filed a bill in equity on October 9, 1884. While this dispute was in progress, James Preston came to Pottsville, and with the knowledge that he only had a life estate in these premises, procured a deed from Sheafer and others in this lot and a receipt is signed by Sheafer for $200 purchase money in full, as paid by James Preston.

What was the effect of this deed ? Clearly it created him a trustee ex maleficio. In the hands of an innocent purchaser, the effect would, possibly, have been different, but James Preston having full knowledge of his life tenancy, and the trust reposed in him for the children, could not, by his wrongful act, in taking a deed in fee, relieve himself of this trust, and the law would impose one on him.

But we do not think it necessary to hold him as trustee ex maleficio, for the facts present him in even a stronger light than this.

In his answer to the above bill in equity of John Preston, filed June 8, 1885, and under solemn oath, he says in the second paragragh, " that said lot and dwelling thereon is the property of James Preston for life." And in the third paragraph, he further says, " the buildings on said lot are the absolute property of James Preston during his life." Surely, here, we have a declaration of trust in writing, confirming by the trustee's own words all the evidence which has gone before, and establishing by written evidence, clear, precise and unequivocal, the contention of the complainants that James Preston held this property for life and was trustee for them as to the remainder.

3. Is the 6th section of the Act of 1856, P. L. 532, a bar to a decree for complainants in this case ?

The section invoked by the defendants reads as follows :

" That no right of entry shall accrue or action be maintained for specific performance of any contract for the sale of any real estate, or to enforce any implied or resulting trust as to realty, but within five years after such contract was made, or such trust accrued, with the right of entry.

" Provided, that as to any one affected with a trust by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or where by reasonable diligence, the party defrauded might have discovered the same ; but no bona fide purchaser from him shall be affected thereby or deprived of the protection of the said limitation."

Numerous authorities have been cited by defendants' counsel in support of their claim that the above statute is a bar, but we do not think, after a careful perusal of the authorities cited,

the facts in this case are in any way like the facts in the cases relied upon. They are not parallel in any particular.

Our view of this case in reference to the application of the above statute, is, that the statute did not begin to run until after the death of James Preston, in November, 1899, and our reasons for this view are as follows:

At the time the bill in equity of John Preston was filed, October 9, 1884, no deed was on record, the deed from Sheafer and others being recorded on October 11, 1884, and in answer to that bill, James Preston only claims an estate for life, in conformity with the order of the court for the purchase of this lot. These complainants had no right of possession, no right of entry until that life estate was terminated by the death of the life tenant, James Preston, and were bound to proceed no further until a higher estate was set up; or one adverse to their own, which never occurred until the death of James Preston, November, 1899. This declaration of trust on the part of James Preston was all these complainants had a right to expect, and lulled further inquiry on their part, and the statute would not begin to run against them until the death of the life tenant, and an adverse claim of the fee by the devisees of James Preston, and we are, therefore, of the opinion that since this occurred in November, 1899, the act of 1856 is no bar.

We, therefore, find the following conclusions of law.

1. That James Preston, defendants' testator, entered into possession of the premises in dispute prior to 1876 as a tenant for life and as trustee under the express order of the court, wherein the three minor children, these complainants, were the cestui que trustents in remainder, and become, by taking the title of the premises in 1884 to himself, a trustee ex malificio.

2. That the statements contained in the answer of James Preston, defendants' testator, in the equity suit above referred to, constitute, in legal effect, a declaration of trust, that he is a life tenant and trustee for the complainants as to the remainder.

3. That section 6 of the act of 1856, P. L. 532, does not apply for the reason that five years have not run since complainants first ascertained that James Preston claimed a greater estate than one for life, or claimed a fee in the premises.

4. That the declaration of said James Preston in said equity

proceedings estops the defendants from claiming the benefit of said act of 1856.

5. That James Preston and his devises are estopped from claiming any higher estate, by virtue of the deed of 1884, than a life estate in the premises in controversy under all the evidence in the case.

In accord with the above conclusions, we enter the following decree:

And now, June 10, 1901, it is ordered, adjudged and decreed that the said James Preston held the real estate, situate on West Coal street, in the Borough of Shenandoah, and marked and known as lot No. 13, block 127, as trustee for Samuel Preston, John Preston and Thomas Preston and that Eliza Preston, James Preston and William Preston, defendants above named, have no right, title or interest in the same, and are wrongfully in possession of the same.

It is further ordered, adjudged and decreed that the said Eliza Preston, James Preston and William Preston surrender forthwith the possession of said premises, to wit: lot No. 13, block 127, West Coal street, Shenandoah, to the complainants, Samuel Preston, John Preston and Thomas Preston.

It is further ordered, adjudged and decreed that the defendants, Eliza Preston, James Preston and William Preston, pay to the said complainants forthwith the sum of $324, being. the amount of rent due from December 1, 1899, to June 1, 1901.

It is further ordered, adjudged and decreed that the defendants pay the cost of this proceeding.

*Error assigned* was the decree of the court.

*John F. Whalen* and *E. W. Shoemaker,* for appellants.—Since the passing of the act of April 22, 1856, a trust in lands can now be proved in no other way than by writing: Barnet v. Dougherty, 32 Pa. 372 ; Martin v. Baird, 175 Pa. 540 ; Christy v. Sill, 95 Pa. 384 ; Fidelity Ins. Trust & Safe Deposit Co. v. Moore, 194 Pa. 617.

The act of 1856 applies to this case: Frost v. Bush, 185 Pa. 544; Mead v. Leffingwell, 83 Pa. 187; Barry v. Hill, 166 Pa. 344; Christy v. Sill, 95 Pa. 380 ; Way v. Hooton, 156 Pa. 8.

*George M. Roads* with him *H. O. Bechtel*, for appellee.— James Preston having been a party to the proceeding whereby a trust was created by the order of the court of May 31, 1870, and his counsel, Judge BECHTEL, having purchased the premises in controversy from Sheafer, is visited with actual notice. Therefore, when in 1884 in fraud of the rights of the remainder-men, he did take from Sheafer all of the right, title and interest of Sheafer and the other owners in said lot without reservation or qualification and undertook, by will, to devise the said title to the defendants in this case, he must be declared a trustee ex malefico for the remainder-men, the complainants in this case : Bispham on Equity, secs. 91, 92 : Barnet v. Dougherty, 32 Pa. 371 ; Christy v. Sill, 95 Pa. 380 ; Silliman v. Haas, 151 Pa. 52 ; Grove v. Kase, 195 Pa. 325.

Appellee's right of entry began on the death of James Preston, the life tenant in 1899. The statute of 1856 begins to run only from the time of the discovery of the fraud, and the right of entry begins : Dickens v. Hays, 7 Atl. Repr. 58 ; Maul v. Rider, 51 Pa. 377 ; Rider v. Maul, 70 Pa. 15 ; Dorsey v. Phillips, 1 S. W. Repr. 667 ; Vigus v. O'Bannon, 8 N. E. Repr. 778 ; O'Dell v. Rogers, 30 N. W. Repr. 229.

A trustee ex malefico will not be allowed for improvements nor will such a trustee be entitled to a tender of what he had paid before there could be a recovery against him : Eberts v. Eberts, 55 Pa. 110. Nor is previous tender necessary ; Keller v. Auble, 58 Pa. 410 ; Duff v. Wilson, 72 Pa. 442.

PER CURIAM, May 19, 1902 :

The decree in this case is affirmed on the opinion of Judge SHAY.

---

202      527
f  25 SC  619

# Henderson *v.* United Traction Company, Appellant.

*Negligence—Street railways—Crossing tracks—Speed of car.*

Where in an action by a husband against a street railway company to recover damages for the death of his wife, it appears that the car which struck the deceased was running at a rate of eighteen or twenty miles an hour, over a public crossing in a populous part of a city, which was double the ordinary speed of cars on the avenue in which the accident occurred ;